IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-02203-WDM-BNB

KEVIN LAVENT BROWN,

Plaintiff,

v.

H.S.A. SANDY HARRIS,
P. A. GREG ROBINSON,
P. A. CHRISTINE MILLER,
ASST. WARDEN RANDY FOSHEE,
MJR. LINDA MAYFIELD,
CAPT. ELOY JARAMILLO,
LT. MIKE TRITZ, and
WARDEN JAMES ABBOTT,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter is before me on the following Motions:

(1) **Motion to Dismiss** filed by defendants Abbott, Mayfield, Tritz, Foshee, Jaramillo,

Harris, and Miller [Doc. #12, filed 1/30/06] (the "DOC defendants' Motion"), and

(2) **Motion to Dismiss** filed by defendant Robinson [Doc. #33, filed 4/4/06]

("Robinson's Motion").

I respectfully RECOMMEND that the Motions be GRANTED and that this case be

DISMISSED in its entirety.  Specifically, I RECOMMEND that (1) the plaintiff's claims be

DISMISSED WITH PREJUDICE insofar as he is suing the defendants in their official capacities,

and (2) the remaining claims be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

## I. STANDARD OF REVIEW

As a preliminary matter, I must liberally construe the pleadings of a *pro se* plaintiff. Haines v. Kerner, 104 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) , the court must accept the plaintiff's well-pleaded allegations as true, and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).  A claim should be dismissed only where, without a doubt, the plaintiff could prove no set of facts in support of his claims that would entitle him to relief.  Id.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter

>jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
>However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff is currently incarcerated by the Colorado Department of Corrections ("DOC"). He filed his Prisoner Complaint (the "Complaint") on October 21, 2005. The Complaint asserts one claim for violation of the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. The Complaint alleges the following:

1.  The plaintiff was forced out of his lower bunk on April 9, 2005. On April 11, 2005, he requested that the medical department update his lower bunk restriction. Defendant Robinson, a Physician's Assistant, reviewed the plaintiff's medical files and told him that, although he had arthritis in his left hip, he no longer met the requirements for a lower bunk. Robinson did not update the plaintiff's lower bunk restrictions.

2.  Between April 12, 2005, and July 5, 2005, the plaintiff notified the medical department that he had chronic pain in his left hip from getting in and out of the top bunk. Robinson did not help the plaintiff.

    3. The plaintiff requested to see an orthopedic doctor on June 12 and 29, 2005. Robinson did not put in an order for the plaintiff to see an orthopedic doctor.

    4. On or around June 28, 2005, the plaintiff was seen by defendant Miller, a Physician's Assistant. The plaintiff requested that Miller provide him with a temporary lower bunk restriction or submit a request that the plaintiff be housed in Cell House 3 where there are no top bunks. Miller refused the plaintiff's request. Miller did not put in an order for the plaintiff to see an orthopedic doctor. Miller was aware that the plaintiff has degenerative arthritis in his left hip and that he had chronic pain in his left hip from getting in and out of the top bunk.

    5. On June 10, 2005, the plaintiff notified defendant Mayfield in writing of his condition and requested that he be housed in Cell House 3. Mayfield gave the letter to defendant Jaramillo.

    6. On June 30, 2005, the plaintiff again notified defendant Mayfield in writing of his condition and requested that he be housed in Cell House 3. Mayfield gave the letter to defendant Tritz.

    7. On June 15, 2005, the plaintiff wrote the Health Service Administrator, defendant Harris, about his difficulty obtaining a lower bunk restriction and the chronic pain in his left hip from getting in and out of the top bunk. He requested that she help him to relieve some of his pain and stress. Harris knew more about the plaintiff's condition than any other staff member. She did not move the plaintiff to Cell House 3, and she would not give him a temporary lower bunk restriction until he was seen by an orthopedic physician. She did not put in an order for the plaintiff to see an orthopedic physician.

    8. On July 7, 2005, the plaintiff notified the Assistant Warden, defendant Foshee, about his condition, the removal of his lower bunk restriction, and the chronic pain in his left hip from

4

getting in and out of the top bunk. Foshee did not move the plaintiff to Cell House 3 and did not give him a lower bunk.

9. On June 13, 2005, defendant Jaramillo received the letter that the plaintiff had sent to Defendant Mayfield. Jamillo did not help the plaintiff.

10. On July 7, 2005, Tritz called the plaintiff to his office and said that he had received the letter that the plaintiff had written to Mayfield. The plaintiff showed Tritz a copy of his MRI report regarding the degenerative arthritis. He also talked to Tritz about the chronic pain in his left hip from getting in and out of the top bunk. Tritz said he had called Mayfield and the lieutenant in Cell House 3, but he did not help the plaintiff.

11. All of the defendants had the authority to place the plaintiff in a lower bunk based on their knowledge of the plaintiff's condition.

12. On July 26, 2005, the plaintiff received a letter from the Warden, defendant Abbott, which stated that he had received the letter plaintiff sent to defendant Foshee. Abbott's letter did not address the chronic pain in the plaintiff's left hip. Instead, Abbott informed him that because he did not meet the medical criteria for a lower bunk restriction, the plaintiff's request for a lower bunk is a security and housing issue.

13. Defendants Harris, Robinson, and Miller intentionally and unjustly delayed their submission of an order for the plaintiff to see an orthopedic doctor.

The plaintiff is suing the defendants in their individual and official capacities. *Complaint*, p. 4-C. He concedes that the he was placed in a lower bunk as of August 17, 2005. Id. at p. 8. He requests that all of the defendants be relieved of their duties as staff members at the DOC. Id. He further requests compensatory and punitive damages. Id.

### III.  ANALYSIS

#### A.  Official Capacity Claims

The defendants assert that they are immune to the claims against them in their official capacities.  *DOC Defendants' Motion*, p. 3; *Robinson's Motion*, p. 3.  This is a facial challenge to the Complaint's allegations.  Therefore, I accept the allegations of the Complaint as true.  Holt, 46 F.3d at 1003.

The Eleventh Amendment bars federal courts from hearing suits against an unconsenting state when brought by the state's own citizens as well as citizens of another state.  Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction."  Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted).

Claims against state officials in their official capacity represent only another way of bringing claims against the state.  See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  The DOC is an agency or subdivision of the State of Colorado.  Consequently, a suit against the defendants in their official capacities is a suit against the state.[1]

I am aware that in Ex parte Young, 209 U.S. 123 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for officials acting within their official capacities. The Tenth Circuit has summarized the exception as follows:

---

[1] Eleventh Amendment immunity was not abrogated by Congress' enactment of 42 U.S.C. § 1983.  Quern v. Jordan, 440 U.S. 332, 345 (1979).  Accordingly, neither states nor officials acting in their official capacities are "persons" within the meaning of section 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).

> *Ex parte Young* recognizes an exception to Eleventh Amendment immunity under which a state officer may be enjoined from taking any steps towards the enforcement of an unconstitutional enactment, to the injury of complainant. The exception enables federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States. The *Ex parte Young* exception, however, is a narrow one. First, **there must be an ongoing violation of federal law**. Second, it applies only to prospective relief and may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past. Finally, it has no application in suits against the States and their agencies, which are barred regardless of the relief sought.

Buchwald v. University of New Mexico School of Medicine, 159 F.3d 487, 496 (10th Cir. 1998) (quotations and citations omitted) (emphasis added).

The plaintiff concedes that he has received a lower bunk restriction. Therefore, he is not suffering an ongoing violation of federal law, and he does not fall under the exception outlined in *Ex parte Young*. The Eleventh Amendment bars the Court from hearing the plaintiff's section 1983 claims in their entirety as against the defendants in their official capacities. I respectfully RECOMMEND the plaintiff's claims be DISMISSED insofar as the plaintiff is suing the defendants in their official capacities.

### B.  Failure to Exhaust Administrative Remedies

The defendants state that the plaintiff failed to exhaust his administrative remedies as to all of his claims. *DOC Defendants' Motion*, p. 6. Because the plaintiff's claims challenge prison conditions, they are governed by the Prison Litigation Reform Act (the "PLRA"). 42 U.S.C. § 1997e(a). The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

7

Id.

The Supreme Court has interpreted section 1997e(a) to require, prior to filing a lawsuit, that the inmate exhaust all available administrative remedies whether the inmate is seeking injunctive relief, monetary damages, or both. Booth v. Churner, 532 U.S. 731 (2001). The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." Id. at 741 n.6.

In order to show exhaustion, an inmate must "attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003) (internal quotations omitted).

> In deciding a Rule 12(b)(6) motion based on exhaustion, the court may consider the attached administrative materials. And if the prisoner does not incorporate by reference or attach the administrative decision, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss. . . . Accordingly, the court may determine from the complaint, as supplemented by administrative documents or a declaration, that a prisoner has failed to exhaust his prison remedies and may dismiss the action pursuant to Rule 12(b)(6).

Id. at 1212.

The Tenth Circuit Court of Appeals reiterated in Steele the importance of the exhaustion requirement:

> The administrative review by correction officials is intended to reduce the quantity and improve the quality of prisoner suits. It should correct problems in meritorious cases, filter out some frivolous claims, and, in any event, facilitate adjudication by clarifying the contours of the controversy.

8

>   Under the plain statutory language and the Supreme Court case
>   law, the substantive meaning of § 1997e(a) is clear: resort to a
>   prison grievance process must precede resort to a court.

Id. at 1207 (citations and internal quotations omitted).  Section "1997e(a) gives prisons and their officials a valuable entitlement--the right *not* to face a decision on the merits." Id. at 1212-13 (emphasis in original) (citations and internal quotations omitted).

Thus, the plaintiff may not bring this action unless he has exhausted all of the administrative remedies available to him through the DOC.  Under the DOC grievance procedures, an inmate must file a Step 1, Step 2, and Step 3 grievance with the appropriate prison official.  *Administrative Regulation 850-04*, § I VB4b.[2]

The plaintiff submits copies of several grievances with his response.  *Plaintiff's Exhibits of Evidence*, Filed February 21, 2006, Exhibits C-1 through C-10.  The grievances establish the following:

1.  Exhibit C-1 shows that on April 13, 2005, the plaintiff submitted a Step 1 grievance which states that defendant Robinson told him that he did not meet the requirements for a lower bunk restriction.  The grievance requests that the plaintiff be given a lower bunk restriction and that he "be seen by a doctor for a strong pain med!"  Id. at Exhibit C-1.

2.  Exhibit C-2 shows that on May 2, 2005, the plaintiff submitted a Step 2 grievance which states that he is being denied medical attention for the pain he is experiencing from getting in and out of his top bunk.  The grievance requests that the plaintiff be given a lower bunk restriction and that he been seen by a doctor for a stronger pain medication.  Id. at Exhibit C-2.

---

[2] I may take judicial notice of administrative regulations.  Fed.R.Evid. 201.

3. Exhibit C-3 is a computer printout which lists grievances received by the DOC from the plaintiff between April 12, 2004, and September 26, 2005. The list reflects that on June 27, 2005, the DOC received from the plaintiff a Step 3 grievance regarding an unspecified medical issue. Id. at Exhibit C-3.

4. The plaintiff filed numerous Step 1 grievances on a variety of issues. Id. at Exhibits C-4 through C-10.

The grievances submitted by the plaintiff do not establish that he exhausted his administrative remedies as to all of his claims. The plaintiff filed Step 1 and Step 2 grievances regarding Robinson's denial of a lower bunk restriction, his request for a lower bunk restriction, and his request to be seen by a doctor for stronger pain medications. The plaintiff's Exhibit C-3, however, does not demonstrate that he filed a Step 3 grievance on the same issues.

Moreover, the plaintiff has not demonstrated that he filed Step 1, 2, and 3 grievances against defendant Miller for her refusal to issue a lower bunk restriction, her refusal to place the plaintiff in Cell House 3, and her refusal to submit an order for the plaintiff to see an Orthopedic doctor. Indeed, the plaintiff did not request to see an orthopedic physician until June 12, 2005, and he did not request to be housed in Cell House 3 until June 28, 2005--more than two months after he submitted his Step 1 grievance.

Finally, the plaintiff has not demonstrated that he filed Step 1, 2, and 3 grievances as to defendants Mayfield, Tritz, Harris, Foshee, Jaramillo, and Abbott's failure to respond to his letters to issue a lower bunk restriction or transfer the plaintiff to Cell House 3.

The plaintiff has failed to establish that he exhausted all of the claims he asserts in his Complaint. Therefore, the Complaint must be dismissed without prejudice:

> [T]he policies underlying the PLRA point toward a requirement of total exhaustion. In the PLRA context, a total exhaustion rule would encourage prisoners to make full use of inmate grievance procedures and thus give prison officials the first opportunity to resolve prisoner complaints. It would facilitate the creation of an administrative record that would ultimately assist federal courts in addressing the prisoner's claims. Moreover, it would relieve district courts of the duty to determine whether certain exhausted claims are severable from other unexhausted claims that they are required to dismiss. Prisoners suing under § 1983, no less than habeas petitioners, can be expected to adhere to this straightforward exhaustion requirement. Finally, the total exhaustion rule will not increase the burden on federal courts, but will instead tend to avoid at least some piecemeal litigation.
>
> The policies of the PLRA thus strongly support a reading of that statute that requires inmates to exhaust fully all of their claims before filing in federal court. If a prisoner does submit a complaint containing one or more unexhausted claims, the district court ordinarily must dismiss the entire action without prejudice.

<u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1190 (10th Cir. 2004) (citations omitted).[3]

---

[3] Because I find that the Complaint must be dismissed for failure to exhaust, I do not reach the defendants' remaining arguments.

## IV.  CONCLUSION

For all of these reasons, I respectfully RECOMMEND that the Motions be GRANTED as follows:

(1)  the plaintiff's claims be DISMISSED WITH PREJUDICE insofar as the plaintiff is suing the defendants in their official capacities; and

(2)  the remaining claims be DISMISSED WITHOUT PREJUDICE for failure to exhaust administrative remedies.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 27, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge